96 So.2d 122 (1957)
Gusto TOLLIUS, Appellant,
v.
CITY OF MIAMI, a municipal corporation of the State of Florida, and Brickell Hammock Civic Association, a non-profit corporation organized under the laws of the State of Florida, Appellees.
Supreme Court of Florida, Division A.
June 7, 1957.
Rehearing Denied July 8, 1957.
Hall, Hedrick & Dekle, Miami, for appellant.
Olavi M. Hendrickson, Miami, for City of Miami.
Pallot, Silver & Mulloy, Miami, for Brickell Hammock Civic Ass'n.
THOMAS, Justice.
In his decree the chancellor denied the relief sought by the plaintiff, that is, the re-zoning of three lots located at the southwest corner of 25th Road and Brickell Avenue so as to permit its use for buildings other than single-family dwellings. The plaintiff's effort to secure re-zoning had been rejected by the Planning Board, and the Board's decision had been sustained by the City Commission. The chancellor observed that although his "personal opinion * * * might be such [that he] would favorably vote to re-zone the plaintiff's property administratively, nevertheless, [he was] of the opinion that the plaintiff [had] not sustained the extraordinary burden required" of him to "overcome the principle that before a Court can grant re-zoning the case presented must show that the matter is not fairly debatable." Miami Beach United Lutheran Church of the Epiphany v. The City of Miami Beach, Fla., 82 So.2d 880.
In order clearly to understand the prime issue in this case it seems fitting now to record a sketch showing the location of the property in question, the nature of the neighboring property and, especially, the system of streets and highways nearby.
In this sketch the numerals 1 to 9 will be used. The number "1" indicates the property involved, number "2" a motel situated diagonally across Brickell Avenue, which is also highway U.S. 1 leading from Miami to Key West, number "3" the future location of a Howard Johnson restaurant, number "4" the entrance of Rickenbacker Causeway, number "5" a four-lane street adjoining the property on the north, number "6" a four-lane street adjacent to the west side of the block in which the property is located, number "7" a five-lane *123 street along the south side of the block, and number "8" the intersection of Brickell Avenue, highway U.S. 1, and the wide street leading to the causeway. The number "9" is used to designate tracts on which there are few, or no, improvements.

*124 There is extremely heavy vehicular traffic on Brickell Avenue, highway U.S. 1, and particularly at the point where it crosses 26th Road, number "7", near the entrance to Rickenbacker Causeway leading to Crandon Park, a popular recreation spot.
The plaintiff charged that the zoning regulation of 1936 placing the property in question in an area limited to use for single-family residences, designated Zone R-1, had become unconstitutional and void as applied to his parcel because of changed conditions and that the regulations should be modified to permit use of the land as a location for an apartment-motel.
The limitation fastened on the use of the tract designated number "2" was removed by a decree of the circuit court of the Eleventh Judicial Circuit 6 July 1951 in which the chancellor declared that the restriction to use for single-family residences was "unreasonable, oppressive, unconstitutional and void." The city appealed and the decree was affirmed. City of Miami v. Hammock Homes, Inc., Fla., 57 So.2d 459.
We repeat that this property is located at the northeast corner of the intersection of highway U.S. 1 and a street running east and west, while the property in litigation is situated at the southwest corner of the same intersection.
We are well aware of the position we have taken that lines of demarcation between zones must be placed somewhere and that there is no force to the argument that property situated on one side of a street need by proximity alone be put in the same zone with property on the other side. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364. But we find no conditions in the present litigation calling for application of the rule because in the setting we have undertaken to depict by the sketch there is too much similarity between the parcel on which an apartment-motel now exists and the property on which the appellant proposes to build one, and between appellant's property and that which a restaurant will occupy.
The decision of this court in City of Miami v. Ross, Fla., 76 So.2d 152, casts some light on the present controversy. We state at the outset of an analysis of the opinion that it appears from the record in this court the property then involved was located about eleven blocks nearer the center of the city, but through traffic on Brickell Avenue and traffic between the center of the city and Rickenbacker Causeway are common to both and there were other circumstances in the cited case that are relevant to the present one.
The plaintiffs had assailed the zoning ordinance as a violation of their constitutional rights because it restricted their land to use for single-family dwellings, and they had prevailed. The city had admitted that the character of the area had changed making the restriction too severe but assumed the position that construction of buildings allowed in an R-3 zone would be detrimental, and represented that the city was then engaged in developing a plan for the entire district which would allow multiple family residences but would differ in important respects from an area then given an R-3 classification.
The author of the opinion remarked that in view of such change of circumstances and the attitude of the city itself that restrictions should be relaxed, the decision whether or not to re-zone was no longer a matter of discretion but had become one of duty. The court after first deciding that the city should accomplish general re-zoning because property in the whole neighborhood had been affected by change of conditions held that this operation on the part of the city should not be interrupted in behalf of owners who suffered no hardship peculiar to them.
Upon rehearing, however, the court concluded that the principles embraced in the main opinion should not be abandoned, but that the complaining property owners were, after all, entitled to relief, citing City of Miami Beach v. Kay, Fla., 71 So.2d 725; City of Miami Beach v. First Trust Co., *125 Fla., 45 So.2d 681; and Lippow v. City of Miami Beach, Fla., 68 So.2d 827.
We cannot agree with the chancellor that the question whether or not the propriety of the restrictions on the use of the appellant's property can be said to be "fairly debatable." The position  we fully understand the chancellor's inclination to hold otherwise were he acting in an administrative instead of a judicial capacity  seems to us refuted by the affirmance of the decree in City of Miami v. Hammock Homes, Inc., supra; it seems refuted by the existence of the four-lane street to the north, and by the existence of the five-lane street to the south through which vehicles flow to and from the causeway; it seems refuted by the nearness of the entrance to the causeway and by highway U.S. 1 passing in front of the very property.
The block in which appellant's property lies is a "veritable island," to borrow a term from appellant's brief. It is surrounded by highways or streets of four or more lanes in width. The south half of the block is owned by the county while that part of the north half lying west of the property in question is also owned by the appellant.
Aside from the characteristics of the land, and the land around it, apparent from the sketch, there was abundant testimony that the property in litigation no longer retained the features which at the time of passage of the zoning ordinance justified classifying it as a site usable only for one purpose. Four witnesses produced by the appellant, and evidently qualified to testify as experts on the subject, agreed that the parcel was no longer suitable for such use. In rebuttal the city offered one expert who stated on direct examination that the property was still properly classified, but weakened the position of the appellees by admitting on cross examination that there were "more people who like to live off a main thoroughfare than on" although some people "like to sit on the front porch and watch the traffic * * * go by * * *." This seemed to be as strong an answer as he could give to the question whether or not the witness would advise a client to buy the property in question for use as a place for a private residence.
The Director and Secretary of the City Planning and Zoning Board conceded that the change in zoning regulations permitting the construction of the apartment-motel designated on the sketch as "2" and the change of the regulations affecting the Howard Johnson property, shown on the sketch as "3" had "possibly * * * made [the property in litigation] a little less desirable * * * for strictly residential use."
Arrayed against the faint showing of the city are the physical facts obvious from the sketch, the overwhelming testimony introduced by the appellant and the additional circumstances that the parcel directly across the street had been purchased by a corporation for the operation of a Howard Johnson restaurant because of its suitability as a site for such a commercial enterprise and that the regulations had been relaxed to permit its use for that purpose.
It appears from evidence in the record that but three dwellings have been built on either side of Brickell Avenue between 26th Road, the street leading to the causeway, and 15th Road since 27 June 1949, and the nearest of these to the property in question is located between 21st Road and 22nd Road. This area extending to 15th Road comes within the territory considered in City of Miami v. Ross, supra.
There must be a substantial and reasonable relationship between the need for zoning restrictions and the public health, morals, safety or welfare to justify interference, by exercise of the police power, with an owner's right to the enjoyment of his property. Only in the presence of such necessity will he be required to make a personal sacrifice for the good of the people. City of Miami Beach v. Lachman, Fla., 71 So.2d 148.
*126 It may be that when the zoning ordinance was passed this need existed and the legislative act could not have been defeated or thwarted because then it could have been fairly debated. But the need twenty years later seems to have been so dissipated by the intervening phenomenal growth of the City of Miami that it is now so out of proportion to the interference with the use of the appellant's property that the exercise of the police power cannot be upheld. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642.
We are impelled to the view that the decree should be reversed with directions to grant appellant the relief he sought.
Reversed.
TERRELL, C.J., and ROBERTS and THORNAL, JJ., concur.