### RAY, et al v. DADE COUNTY.
No. 63-C-12507.

Circuit Court, Dade County.
June 25, 1965.

Mershon, Sawyer, Johnston, Dunwody, Mehrtens & Cole, Herbert S. Sawyer and Peter C. Jones, all of Miami, for plaintiffs.

St. Julian P. Rosemond, Assistant County Attorney, for defendant.

JAMES W. KEHOE, Circuit Judge.

This cause first made its appearance in this court by a complaint for equitable relief on November 18, 1963. It was alleged and the court so finds, as will be hereinafter explained, that plaintiffs, J. C. Ray, Elizabeth M. Ray, Clarence W. Norwood and Ray Realty Corporation owned certain property and had entered into a sales agreement with the plaintiff, Texaco, Inc., to convey same to it, conditioned upon Texaco Inc.'s being permitted to construct and operate a gasoline filling and service station on the property. It was zoned RU-3 and RU-2 which did not permit service stations. The owners filed an application with the Metropolitan Dade County Zoning Appeals Board for a district boundary change to BU-1A, which would permit limited business including service stations. The board recommended such change, but the board of county commissioners of Dade County on September 12, 1963 arbitrarily and unreasonably reversed that action by adopting resolution no. Z-205-63. The then zoning had been established in 1938. The Rays had owned the property upon which it was sought to construct a service station since before that time. It had been vacant and unused, except for two frame dwellings which no longer serve any useful purpose. The property could not be disposed of except at a tremendous sacrifice.

The action of the board of county commissioners was unreasonable, discriminatory, oppressive, confiscatory, and was not based on any relation to public health, morals, or the general welfare and as applied to that property was unconstitutional under the 14th amendment to the constitution of the United States and article XII of the Declaration of Rights of the constitution of Florida.

The plaintiffs in their complaint sought to have the court enter an order holding such zoning to be invalid, void, unconstitutional and arbitrary as applied to this property and to have the county commission change the then arbitrary and confiscatory ordinance boundary to BU-1A and require the commission to issue necessary permits and certificates of occupancy for the erection and maintenance of a gasoline filling and service station on the property and that Dade County be permanently enjoined from interfering with the construction and operation of said station.

The county moved to dismiss the complaint and for a summary judgment, contending that the plaintiffs should have proceeded by certiorari from the action of the board of county commissioners. This court denied those motions by order of April 17, 1964, and the county took an interlocutory appeal to the Third District Court of Appeal, and that court by order of July 24, 1964, in Dade County v. Ray, 166 So. 2d. 475 (Fla. App. 1964), affirmed, citing Harris v. Goff, 151 So. 2d. 642 (Fla. App. 1963).

The matter then came back to this court for trial on the merits and was tried October 7, 1964 for approximately three days. At the commencement of the trial the complaint was amended without opposition by eliminating a large portion of the original tract sought to be zoned. Twelve witnesses were presented, and many exhibits were admitted. The court, with consent of respective counsel personally and alone examined the property and surroundings.

A decree was entered on December 9, 1964 finding that the then zoning was too restrictive as to use and not fairly debatable, and thus invalid, void, arbitrary, confiscatory, and unconstitutional as applied to the particular property in question. The court quashed the resolution of the county commissioners, directed the county commissioners to re-zone said property to a zoning classification or district that permitted a more liberal use and which would not be invalid, void, arbitrary, confiscatory or unconstitutional as applied to said property. The court retained jurisdiction to review the action of the commission as did the court in Hillsborough County v. Twin Lakes Mobile Homes Village, Inc., 166 So. 2d. 191 (Fla. App. 1964).

Thereafter on March 18, 1965, the county commissioners after further hearing adopted resolution no. Z-59-65, zoning said property in classification RU-5, which is known as "Residential — Semi-Professional Office District."

Thereafter on May 7, 1965 on further motion of the plaintiffs, the matter was again heard by the court on the record made at the trial October 7, 1964, the record of the last hearing before said county commissioners on March 18, 1965, and further testimony.

*Findings of fact*

From the evidence, the exhibits, and the court's own examination of the property and its surroundings, the court finds—

1. The property is located on the south side of U.S. 41, also known as the Tamiami Trail or S. W. 8th Street, between the Palmetto Expressway on the east, 79th Avenue on the west, and vacant property on the south. It consists of lots 1, 2, 3, 4, 5, 6, and 7, block 5, of the 2nd. Amended Glademoor Tract recorded in plat book 8, page 10, of the public records of Dade County, less that portion used for the rewinding of Tamiami Trail and that portion of tract 3 of H. A. Babcock Plat, recorded in plat book 3, page 46 of the public records of Dade County, lying north of the projected south line of said lot 7, block 5 to the right-of-way of the Palmetto By-Pass, less the northerly and northeasterly portion thereof acquired for the limited access right-of-way of the Palmetto By-Pass.

2. It faces 143.31 feet on U.S. 41, which is a four-lane highway at that point with a median strip running westerly in the center thereof almost to a point directly north of the northwest corner of the property, which strip divides the east and west lanes of traffic.

3. The state of Florida took all the plaintiffs' property along U.S. 41 from the Palmetto Expressway to within 143.31 feet of S. W. 79th Avenue and some 50 feet deep at the east line of lot 4, block 5, and constructed a metal fence running to the east side of lot 4. The state did not take the entire frontage but left 143.41 feet available for use by the property owners.

4. Eighty to ninety percent of both sides of U.S. 41, or Tamiami Trail, is zoned and used for business purposes with a large number of service stations all the way from Brickell Avenue to the Palmetto Expressway, a distance of some seven or eight miles, and continuing west on U.S. 41 past the expressway on the south side thereof for several miles, with six service stations west of said property within one mile, one of which is on the opposite corner of 79th Avenue and the Trail just across the street. On the north side of the Trail and bordering it at this point, and west for many miles, and east for some distance, is a wide, deep drainage canal of the Central and Southern Florida Flood Control District. This canal provides an excellent buffer for property located north of the canal.

5. The court's examination and the many exhibits, especially plaintiffs' exhibit 7, and the testimony of the expert witnesses, show that the property is unfit for any residential purposes or for office use. The four-lane highway with automobiles and trucks continually passing the property, and its location being far removed from any type of "walk-in" business, make in unfit and unusable and unsalable for any such purposes.

8. The owners have held this property since before the zoning as RU-2 and RU-3 became effective in 1938. During all of that time it has remained vacant and the owners have suffered great hardship and will continue to suffer hardships out of all proportion to any possible advantage to the community and its inhabitants so long as the property is zoned RU-5. The undisputed testimony is that it was worth only about $20,000 when zoned RU-3 and RU-2, and is worth no more now zoned as RU-5, but it would be worth at least $100,000, perhaps $115,000, zoned as BU-1A, and that RU-5 is among other things, confiscatory.

7. The zoning for residential — semi-professional office district, RU-5, article XIXA of the code of Metropolitan Dade County, provides for 41 uses, the first two being — (1) duplex dwelling, and (2) apartment house (three or more families depending on the available lot area). The other 39 uses are for offices of doctors, lawyers, dentists, insurance adjusters, appraisers, architects, auditors, chiropodists, chiropractors, and many other like businesses and professions. The surroundings and circumstances pertaining to this property, including the four-lane highway traffic, its being far removed from any activity which would possibly support any of the office uses mentioned in RU-5, make it impossible for the present owners to make any practical use of the property, and if left in RU-5 zoning it would probably lie vacant in the forseeable future. No reasonable-minded person would attempt to use it for any of the uses prescribed in RU-5. The property cannot be used and it would, under such zoning, be unreasonable to require the plaintiffs to use it for any of the purposes described in RU-5.

8. The highest and best use to which this property can be put is for a gasoline filling and service station.

9. The service station to be built on the property is to be set back far enough from both U.S. 41 and S. W. 79th Avenue, as to make ingress and egress easy and much safer than would be true with many other types of construction allowed under RU-5. Moreover, the construction is open and permits easy view thereby diminishing the possibility that a traffic hazard would be created.

10. The operation of a service station there would not be detrimental to any of the surrounding property. From an examination of the property and its surroundings, the evidence, and especially plaintiff's exhibit 6 and 7, it is evident that such a station would not be detrimental but would rather be a benefit to the surrounding area. The property would certainly produce more taxes. There are no residences east or west on the Trail for a long distance. The Palmetto Expressway with its expansive cloverleafs and other approaches joins the property on the east. There are two old shacks on the premises but will be removed upon erection of a service

station. On the west of the property there is no residence for many blocks on the Trail but, as already found, there are many service stations on the south side of the Trail to the west of the property. The property is several hundred feet from any residences on the south and is buffered by an intervening RU-2 zone. The wide deep canal adjoining the Trail on the north with the avenue of Australian pines, plus of course, the four-lane highway, constitutes a perfect buffer for any residences to the north, and there are none for some distance.

11. Changing the zoning to BU-1A will not affect any overall zoning plans of Dade County.

12. All the expert witnesses for the county were employees of the county. The expert witnesses for the plaintiffs qualified as independent experts in either zoning or traffic.

13. The many restrictions exceed the bounds of necessity for the public welfare.

14. The access ramp to the Palmetto Expressway south, leading off east of this property in no way complicates the traffic pattern or tends to cause a more hazardous situation. The ingress and egress there will constitute no greater hazard than the ingress and the egress to dozens of other service stations on the Trail. In fact, it would be no more hazardous than the operation of the service station just across the street or for that matter, any other point of ingress and egress on the Trail and would not be any more of a traffic problem than an office building or apartment complex even if the property were suitable for such use.

15. If the state road department in condemning land for the access ramp had considered that the use of the 143.31 feet frontage on U.S. 41 would constitute any hazard to traffic, it should have continued its condemnation on to the east side of S. W. 79th Avenue and paid for the land taken instead of leaving it, expecting the owners to let it lie there vacant indefinitely and continue to pay taxes on it, when other property owners similarly located are not denied the use of their property through unreasonable use of the zoning power.

Many other facts were brought out that further support the decision of the court, including testimony and evidence upon which the court concludes that the action of the board of county commissioners was arbitrary, unreasonable, confiscatory, void, invalid and unconstitutional as applied to the property — and testimony establishing that the action of the county commission was not quasi-judicial; — but to enumerate them here would render this opinion too long.

## Conclusions of law

The court confirms its findings in its final decree of December 9, 1964 to the effect that in the hearing on the application for change of zoning had before the county commission there was no proper record made before it, no witnesses were sworn, no testimony taken, no evidence was adduced upon which this court could determine in applying the fairly debatable rule the reasonableness of the commission's action. The purported record of what did occur was so garbled that merely bringing up that record of non-judicial action to this court by certiorari would not provide this court with such facts as would make it possible to determine the reasonableness of the commission's action. The court does not find that the commission did not have the power and authority to act in such matters in a quasi-judicial capacity and perform quasi-judicial actions — but the court does find that in this case it did not do so.

The court is not unmindful of the "fairly debatable" rule and has carefully considered this case in the light of numerous Florida and appellate decisions from other states on that point and concludes that there is here no fairly debatable issue. There is substantial evidence, in fact, the great weight of the evidence leads unerringly to the conclusion that the zoning classification of RU-5 is too restrictive, is invalid, void, arbitrary, unreasonable, confiscatory and is based on no relation to public health, morals, or general welfare and is unconstitutional as applied to this property. The determination of whether it is fairly debatable is not based upon the fact that there may be testimony on both sides. It was said in La Salle National Bank of Chicago v. County of Cook, 145 N. E. 2d. 65 (Ill. 1957)—

> Much evidence was heard concerning traffic conditions, general character of the neighborhood, highest and best uses, valuations, etc. Each side produced expert witnesses to sustain its contentions. Difference of opinion does not render plaintiff's evidence unbelievable or require a finding that the reasonableness of the ordinance is debatable.

Also, in that case the court laid down some helpful guide lines, which are also followed by the Florida courts. It said—

> Even though the validity of each zoning ordinance must be determined on its own facts and circumstances (citations) yet an examination of numerous cases discloses that among the facts which may be taken into consideration in determining validity of an ordinance are the following: (1) The existing uses and zoning of nearby property (citations), (2) the extent to which property values are diminished by the particular zoning restrictions (citations), (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, or general welfare of the public (citations), (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner (citation),

(5) the suitability of the subject property for the zoned purposes [in this case residences on 10,000 square feet] (citations), (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property (citations).

The substantial weight of the evidence as to the basic physical facts support the plaintiffs' position. In City of Tulsa v. L. L. Swanson, 366 P. 2d. 629 (Okla. 1961), the court held that in determining the fairly debatable question the court must look to and examine the record in order to ascertain from "the basic physical facts" whether the findings as made are consonant with or against the clear weight of the evidence. It then said—

> The evidence of the city consists in its entirety of testimony by a professional urbanist (city planner) in whose opinion the properties on the east side of Yale should be restricted to commercial use of "lesser intensity" in order to furnish a protective "buffer zone" for the residences to the east.

The court then went on to say—

> An academic opinion of a professional city planner as to the desirability of a particular restriction to serve as a "buffer of lesser than normal commercial intensity", will not, when contradicted by controlling physical facts, justify this court in holding as a matter of law that the question here presented is "fairly debatable" and precludes judicial interference with the municipal determination of necessity for the particular restriction placed, (citations).

The traffic argument advanced by the county is contrary to the physical facts as stated above which are that there would be no more of a hazard and possibly even less of a hazard created by a gasoline service station than by an office building.

With reference to this point see Chicago Title and Trust Co. v. Wilmette, 188 N. E. 2d. 33 (Ill. 1963), wherein the court said—

> Nor do we find that traffic conditions at the intersection afford a rational basis for discrimination against the plaintiff's property. While it is the defendant's contention that cars coming and going from the gas station would increase the congestion and accident hazard at the intersection, the same would be true of cars going to and from group housing with the result that the residential classification is not necessary to the end that congestion and accident hazard may be lessened or avoided in any appreciable degree.

There are two recent Florida cases which support the view that changed conditions in the area of the subject property, such as the widening of the Tamiami Trail and the construction of the Palmetto Expressway together with the expanding commercialization of the Trail, render the property undesirable and unsuitable for the use which it is presently zoned.

One of these cases is Burritt v. Harris, 172 So. 2d. 820 (Fla. 1965). In that case the Florida Supreme Court said—

> The constitutional right of the owner of property to make legitimate use of his lands may not be curtailed by unreasonable restrictions under the guise of police power. The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety or welfare. If the zoning restriction exceeds the bounds of necessity for the public welfare, as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights.

The facts of the case are relatively unimportant for the reason that each zoning case must stand on its own merits.

However, it is significant that in the Burritt case there was testimony of possible increased hazardous conditions around the airport and testimony of the county engineer and zoning director that the application should be denied, but the Supreme Court still held that the property was unsuitable for anything more restrictive than Industrial "A".

In Lawley v. Town of Golfview, 174 So. 2d. 767, the Second District Court of Appeal relied on the Burritt case — with facts which would not seem to be as compelling as the facts developed in the trial of this case.

In that case the court pointed out that the Burritt case apparently shifts the burden to the zoning authority to prove that the zoning restrictions bear substantially on the public health, morals, safety, and welfare of the community.

In the instant case it is not necessary to conclude that the county failed to carry its burden for the petitioners have proven that the zoning restriction exceeds the bounds of necessity for the public welfare and that the zoning is not fairly debatable but rather arbitrary, unreasonable, discriminatory, and confiscatory.

It may be that the property here involved was suitable for residential use many years past, but as the court said, in Tollius v. City of Miami, 96 So. 2d. 122, 126 (Fla. 1957) —

> It may be that when the zoning ordinance was passed this need existed and the legislative act could not have been defeated or thwarted because then it could have been fairly debated. But the need twenty years later seems to have been so dissipated by the intervening phenomenal growth of the City of Miami that it is now so out of proportion to the inter-

ference with the use of the appellant's property that the exercise of the police power cannot be upheld.

Further, the change to residential — semi-professional office building cannot be justified in the interest of the public health, safety, morals, or welfare and is in fact, in many respects more objectionable and just as confiscatory without any relative gain to the public as compared to the hardship imposed upon the property owner.

Therefore, under the authority as outlined in the Burritt case wherein the court said—

> It is not the function of a court to rezone property but, the facts and circumstances of this cause considered, it is our function to determine at what point zoning restrictions become arbitrary. The evidence having conclusively shown the petitioner's property to be unfit for residential purposes, it is our view the petitioner's rights should be settled here by holding the respondents are required to rezone petitioner's property to a classification not more restrictive than industrial "A".

It is ordered, adjudged and decreed that—

(1) The zoning classification of RU-5 is too restrictive, invalid, void, arbitrary, confiscatory, and unconstitutional as applied to the said property and has no relation to health, morals, safety or the public welfare.

(2) The board of county commissioners of Dade County shall rezone the said property within 30 days of the date of this decree to a classification not less restrictive than BU-1A, and in the absence of such rezoning, the board of county commissioners or appropriate authorities of Dade County shall immediately thereafter issue the necessary permits authorizing the construction and operation of the gasoline filling and service station on the said property.

(3) Dade County, its officers, agents, employees and servants be and the same are hereby severally separately and permanently enjoined from preventing or interfering with the plaintiff, Texaco, Inc., in the construction and operation of a gasoline filling service station on said property.

(4) This court retains jurisdiction for the purpose of enforcing this decree.