213 So.2d 589 (1968)
Nathan MANILOW and Samuel J. Kanner, As Trustee, Appellants,
v.
CITY OF MIAMI BEACH, a Florida Municipal Corporation, Appellee.
No. 67-566.
District Court of Appeal of Florida. Third District.
August 6, 1968.
Rehearing Denied September 16, 1968.
Brigham & Brigham and Sidney J. Berger, Miami, for appellants.
Joseph A. Wanick, City Atty., for appellee.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
PER CURIAM.
Appellants are the legal and beneficial owners of certain real property located in Miami Beach, Florida. It consists of Lots 1, 2, 3, and 4; Flamingo Bay Subdivision, Plat Book 6, Page 101, Public Records of Dade County, Florida, and occupies the northeast corner of the intersection of Arthur Godfrey Road and Pine Tree Drive; lying against Indian Creek on the east; and a single family residence on the north. The lots all have approximately 100 ft. frontage on Pine Tree Drive and Lot One has a frontage of approximately 385 feet on Arthur Godfrey Road. The property has been zoned for single family residence use since 1930, 38 years, under the Miami Beach Zoning Ordinance. In 1951, Gimbel, then owner of Lot One, attempted to obtain relief from the single family zoning restriction on the use of the property in the Circuit Court of Dade County. The relief was denied.
In January 1967, the present owners filed the instant action seeking, inter alia, a court decree that the city zoning ordinance was void, arbitrary and unconstitutional as it applied to their property. The defendant, City of Miami Beach, answered with general denials and pled various affirmative defenses, including a plea of res judicata. After extensive hearings and argument, the trial court denied plaintiff the relief sought and also ruled that the city *590 had failed to prove its plea of res judicata. The owners have appealed and the city has cross assigned as error the denial of its plea of res judicata. A copy of the plat of the subject property is shown as "Exhibit A."

*591 An aerial photograph of the subject property and intersection is reflected in plaintiff's Exhibit Five.

*592 The record on appeal reflects that immediately south of this property and across Arthur Godfrey Road is a four story motel, the Moulin Rouge, with its parking lot and entrance directly across from the subject property. Immediately south of the motel is a large, attractive church building. Its parking lot lies next to property which is zoned and used for single family residences. A comparison of the exhibits submitted in the Gimbels' suit in 1951 with those showing the present situation indicates that single family residences had to be demolished for the construction of the motel and church. The city in 1950 changed the single family zoning on the motel and church property to RE multiple family zoning. This change to RE permits high rise apartments, motels and churches to be constructed immediately south of plaintiff's property. For a discussion of the difference involved in motel vs. high rise apartment houses see City of Miami v. Zorovich, Fla.App. 1967, 195 So.2d 31.
On the southwest corner of the intersection of Arthur Godfrey Road and Pine Tree Drive there is a large A & P grocery store. The city passed two ordinances which changed and liberalized this zoning to permit a grocery store use. A large parking lot lies south of and adjacent to the grocery store.
On the northwest corner of the intersection is the Jefferson National Bank. In 1955, the city changed the zoning on this corner from RE multiple family to permit banks in that particular use zone. Recently the bank was granted permission to add three additional stories to its present building. City of Miami Beach v. Courshon, Fla.App. 1968, 21 So.2d 828.
In 1966, the city changed the commercial zoning on the property adjoining the bank on the west to permit the construction of the nine story Midtown Medical Center office building. It is fully occupied today and its ground floor is occupied by a large modern drug store and stock brokerage office. Parking for the bank is through a driveway directly west of plaintiff's property.
In December 1959, the Julia Tuttle Causeway was officially opened to traffic. It is now the primary traffic artery from the Miami International Airport to Miami Beach and was not in existence in 1951 when the Gimbels' suit was filed. The bridge across Indian Creek was then a narrow two lane bridge but is now a modern five lane bridge accommodating large amounts of traffic both day and night. There was testimony that the traffic flow passing plaintiff's property had increased 100% since the opening of the causeway. Thus, plaintiff's property on the northeast corner of the intersection is zoned for single family residences. On the southeast corner is a large motel; on the southwest corner is a large super market; on the northwest corner is a large modern bank; and all of these commercial establishments have their attendant driveways, parking areas, and traffic problems for their commercial clients. Plaintiff's property on the south faces on one of the major traffic arteries between Miami and Miami Beach, which is used for business purposes practically in its entirety, except for plaintiff's property. The property is then, except for the northernmost part, similar to the "veritable island" with which the Supreme Court of Florida was faced in Tollius v. City of Miami, Fla. 1957, 96 So.2d 122. The court therein held:
"It may be that when the zoning ordinance was passed the need existed and the legislative act could not have been defeated or thwarted because then it could have been fairly debated. But the need twenty years [here thirty-eight years] later seems to have been so dissipated by the intervening phenomenal growth of the City of Miami [Miami Beach] that it is now so out of proportion to the interference with the use of the appellant's property that the exercise of the police power cannot be upheld." [Id. at 96 So.2d 126, brackets ours].
*593 The factual situation herein is quite similar to that of Kugel v. City of Miami Beach, Fla.App. 1968, 206 So.2d 282, 284, 285, where this court stated that "the changes in the area have resulted in a large concentration of nonresidential activity in a residential area" and "that the character of the property has already been changed by other actions of a municipality". We will not add to this opinion with the other similarities in Kugel. The court therein held that "where changed conditions create a situation where the zoning of appellant's property is so unreasonable as to constitute a taking of his property", then the courts are justified in striking down the arbitrary zoning classification. [Id. at 206 So.2d 284] See also Burritt v. Harris, Fla. 1965, 172 So.2d 820; Tollius v. City of Miami, Fla. 1957, 96 So.2d 122; Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941); Town of Surfside v. Andrews, Fla.App. 1967, 193 So.2d 207; Shearer v. Metropolitan Dade County, Fla.App. 1966, 189 So.2d 501; Town of Palm Beach v. Leach, Fla.App. 1966, 185 So.2d 743; Watson v. Mayflower Property, Inc., Fla.App. 1965, 177 So.2d 355; and Lawley v. Town of Golfview, Fla.App. 1965, 174 So.2d 767.
The rationale applied in Kugel, supra, appears to be appropriate here. To deny the relief sought herein, as in Kugel, would constitute spot zoning in reverse. See Smith (& DeMaris Investing Co.) v. City of Miami Beach, Fla.App. 1968, 213 So.2d 281.
The plaintiff herein has shown a material change in circumstances since the denial of relief in the Gimbels' suit in 1951. See City of Miami Beach v. Prevatt, Fla. 1957, 97 So.2d 473; City of Miami Beach v. Parking Facilities, Inc., Fla. App. 1960, 120 So.2d 209.
The record reflects that plaintiff carried the burden of showing that this property was unsuitable for use under a single family residence classification and that it would be arbitrary and unreasonable to impose on this property a zoning classification more restrictive than RE multiple family zoning; which is equal to, or less than, the zoning on the other three corners of this intersection.
We have considered the other points on appeal and find them to be without merit.
The judgment appealed is reversed and the cause remanded for further action consistent herewith.