276 So.2d 200 (1973)
Harold F. STOKES, St. Johns Enterprises, Inc., a Corporation, et al., Appellants,
v.
The CITY OF JACKSONVILLE, a Municipal Corporation, Appellee.
No. Q-419.
District Court of Appeal of Florida, First District.
March 29, 1973.
Rehearing Denied May 8, 1973.
*201 Tyrie A. Boyer, Jacksonville, for appellants.
T. Edward Austin, Jr., Gen. Counsel, Thomas D. Oakley and W.E. Grissett, Jr., Asst. Gen. Counsel, for appellee.
RAWLS, Acting Chief Judge.
Appellants' primary contention in this appeal from a final judgment in favor of appellee is that the City's action in failing to rezone appellants' property from a single family residence classification to a commercial intensive classification is so arbitrary and capricious that it constitutes an unconstitutional confiscation of appellants' property.
Seven lots comprising a little more than one acre of land are involved. The aggregate lots are bounded on the north by Post Street (a four-lane highway); on the south by Astral Street; and on the west (230' frontage) by Cassat Avenue, a heavily traveled six-lane highway. The easterly ten feet of the subject property, which abuts a long-established single family residential neighborhood, was intentionally *202 omitted from the application for rezoning for the purpose of affording a landscaped buffer strip. Lot 102 which contains 115 feet frontage on Cassat Avenue and 70 feet frontage on Post Street has always been vacant. Abutting Lot 102 to the east is Lot 103 which has 50 feet frontage on Post Street and a southerly depth of 115 feet. Lot 103 had a house situated upon it which was condemned by the City of Jacksonville and removed. This lot is now vacant. Lots 104 and 105, each fronting Post Street for a distance of 50 feet and running south 115 feet, are improved by a single family residence and are owner-occupied. Lot 9 is situated on the corner of Cassat Avenue and Astral Street with a 115-foot frontage on Cassat Avenue (the residence is now only 10 feet from the right-of-way line) and a 65-foot frontage on Astral Street. It is improved by an owner-occupied residence which is located only 10 feet away from the right-of-way line for Cassat Avenue. Lots 8 and 7 each have 63 feet frontage on Astral Street and are 115 feet deep, and each are improved with an owner-occupied residence.
At present, Cassat Avenue is the dividing line in this specific area between commercial development to the west and a residential area to the east. Cassat Avenue is predominantly an automotive oriented artery where sizable investments have been made by automobile dealers. The eastwest street on the northern boundary of the subject property is Post Street (a four-lane highway) which becomes Normandy Boulevard (a six-lane thoroughfare) after crossing the western side of Cassat Avenue. A Standard Oil service station is located on the corner of Post Street and Cassat Avenue directly to the north of Lots 102 and 103. Located diagonally across Cassat Avenue from the subject property is a Shell service station and directly west across Cassat Avenue is situated an American Oil Co. service station. So, three out of the four corners of the intersection of Cassat Avenue and Normandy Boulevard-Post Street are now occupied by service stations. In addition, directly across Cassat Avenue from this acre parcel is located a "Super Burger" restaurant; a fish market, House of Trophies business, a billiard parlor, and a cocktail lounge.
This record is replete with evidence that the subject property is not suitable for single family residential zoning. Mrs. Harrell testified that she had lived on Lot 104 for 24 years and during this period of time, a marked change in the neighborhood had occurred. Specific examples given by her were increased traffic on Post Street because of Normandy Boulevard and Normandy Shopping Center; service stations on three corners of Cassat and Normandy-Post; that she cannot sit on the porch because of the noise of the cars and fumes; and that when she moved there it was purely residential. Mrs. Johnson, who lives on Lot 105 testified that the traffic and fumes are so obnoxious that she cannot open her front door for any length of time, is not able to "... hear any TV", and the fumes permeate her house; all of which result in discomfort to her in living on this property. Mr. Masters testified that he had lived on the corner of Cassat Avenue and Astral Street (Lot 9) since 1946; that when he first moved there, Cassat Avenue was a two-lane highway and was subsequently widened to about a hundred feet, six-lane highway, located approximately 10 feet from his house; he has to back his car out of his garage onto Cassat which sometimes takes about 15 to 20 minutes; is forced to keep the windows and doors of his residence closed all the time; has difficulty in sleeping due to traffic noise and sirens; and that in 1952, the character of the neighborhood began changing when a service station and a hamburger place located across the street. Mr. Sapp testified that he had lived next to Mr. Masters (Lot 8 fronting Astral Street) since 1957, and that the neighborhood had substantially deteriorated; since he bought this property, Cassat Avenue had been widened and Normandy Boulevard had also been widened and *203 "... made strictly a commercial area west of Cassat which is the Normandy Shopping Mall... . As an illustration, we had our bedroom on the northwest side of our home, and we closed this bedroom off and moved to a bedroom on the east side because of the noise and gasoline... . Cassat Avenue now is a truck route and these tremendous diesel trucks, and the kind of trucks that haul concrete, things of that kind, they generate a lot of smoke and gass and a lot of oil... . We have had rats and things of that type, not little mice, but we have had these big wharf rats. That was due to the restaurants and fish market, and another thing ... ."
Experts adduced by the landowners testified at length as to the unsuitability of the subject property to be used for residential purposes or for apartments or institutions. One expert witness, a land development and zoning consultant who had assisted in preparing 30 to 35 zoning ordinances in the Southeast including two for the Jacksonville Area Zoning Plan, testified unequivocably that it is absolutely wrong to break a zoning line at a major thoroughfare and that the most appropriate and feasible use of the subject property was a C.I. (commercial intensive) zoning. This witness emphasized the intensive automobile activity at the Post-Normandy and Cassat intersection which now exceeds a traffic volume in excess of 22,000 vehicles daily and "... when we talk of residential property, we are also concerned about the safety of the residents in this area, in an area such as this." He also emphasized that where a transition has occurred from residential to commercial that sufficient depth  at least 200 feet  is required for good ingress and egress off the major street and to provide adequate parking. Another expert witness on behalf of the landowners testified as to the general commercial nature of the area involved. This witness testified that Interstate 10 and Cassat Avenue intersection is eight blocks north of the subject property, and that south of I-10 there is considerable commercial development. The area south of the property sought to be rezoned is commercial on each side of Cassat Avenue.
The City produced one expert witness, the deputy director of the Jacksonville Area Planning Board. He testified that the lots facing Post Street are improperly zoned, but that he was opposed to the requested commercial zoning because he felt there were other classifications which would be more in keeping with the character of the neighborhood. This witness based his opinion primarily upon the premise that the proposed use of the property would result in an increase of traffic; however, upon cross examination, he admitted that any of the classifications he thought appropriate would also result in additional traffic. It is interesting to note that this witness opposed a rezoning of the location of the Standard Oil service station site directly north of the subject property, but the City Council of Jacksonville rejected his recommendation and granted the rezoning application. A number of residential property owners in the general area testified that rezoning the subject property would adversely affect the value of their property.
Zoning ordinances, like all other legislative acts, are presumed valid. However, in order for a zoning ordinance to be valid it must have some substantial relationship to the promotion of the public health, safety, morals or general welfare.[1] The manifest weight of evidence  actually, the overwhelming evidence  is that the subject property is not suitable for single family residential purposes. But, says the City, the requested zoning classification *204 will increase the traffic volume in this area, and thus under the police power, it is our prerogative to deny the landowners the right to use their property for the purposes for which it is best suited. Such argument will not hold water.
These residents purchased their homes many years ago in a relatively quiet residential area. The sovereign, not the landowners, determined that it was in the public's welfare to expand a two-lane highway into a six-lane thoroughfare continuously traversed by noisy, smoke and fume emissioning behemoths which rendered their residences almost uninhabitable. It was the sovereign, not the subject landowners, that granted to the property owners directly across Cassat Avenue the right to develop intense commercial usage of their property without regard to increased vehicular traffic. And it was the sovereign, not the subject landowners, that permitted a service station to the north, and a service station to the northwest, and a service station to the west. These landowners are so surrounded by commercial activity that they must have an empathy with General Custer in his last stand. In short, the sovereign, by its past activities, has changed the character of this immediate neighborhood, and having done so, now refuses to recognize that which it created. As stated by the Third District Court of Appeal in Manilow v. City of Miami Beach, 213 So.2d 589 (3 Fla.App. 1968):
"The factual situation herein is quite similar to that of Kugel v. City of Miami Beach, Fla.App. 1968, 206 So.2d 282, 284, 285, where this court stated that `the changes in the area have resulted in a large concentration of non-residential activity in a residential area' and `that the character of the property has already been changed by other actions of a municipality'. We will not add to this opinion with the other similarities in Kugel. The court therein held that `where changed conditions created a situation where the zoning of appellant's property is so unreasonable as to constitute a taking of his property', then the courts are justified in striking down the arbitrary zoning classification."
The City strenuously argues that it should not be held accountable for the commercial development on the western side of Cassat Avenue because this avenue was the dividing line between Duval County and the City, and it was the county zoning authorities who permitted commercial usage while historically the City of Jacksonville has restricted the area to single family residential use. This argument fails for several reasons, viz: First, the city authorized a large service station on the east side of Cassat Avenue directly across Post Street from the subject property; secondly the "bold new city" not only inherited the assets of Duval County, it likewise inherited the liabilities of its predecessor in title; and lastly, the question isn't why these landowners are being deprived a legitimate use of their property, but to the contrary, are they being so deprived.
The constitutional right of the owner of property to make legitimate use of his lands may not be curtailed by unreasonable restrictions under the guise of police power. The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety or welfare. If the zoning restriction exceeds the bounds of necessity for the public welfare, they must be stricken as an unconstitutional invasion of property rights.[2] The zoning restriction, as applied to the facts adduced herein, is invalid in that it exceeds the bounds of necessity for the public welfare and was therefore arbitrary.[3]
*205 It is our conclusion that appellants met their burden in proving that the action of the City is "not debatable" and that the City entirely failed to rebut the overwhelming proof adduced by appellants to the effect that the property should be zoned in a category not less than C.I.
The judgment appealed is reversed with directions to rezone appellants' property to a use not less than C.I. (commercial intensive).
Reversed and remanded.
JOHNSON and WIGGINTON, JJ., concur.
NOTES
[1] The City argues inter alia that five of the seven lots are occupied by owner-residents; ergo, the property must be suitable for such use. Such an argument is specious, to say the least, in reviewing the testimony of the owners who are in effect being forced by the City's actions to utilize the property as residential.
[2] Burritt v. Harris, 172 So.2d 820 (Fla. 1965).
[3] City of St. Petersburg v. Aikin, 217 So.2d 315 (Fla. 1968), and Watson v. Mayflower Property, Inc., 177 So.2d 355 (2 Fla.App. 1965).