### BEAUCHAMP v. DADE COUNTY.

No. 73-24885.

Circuit Court, Dade County.

July 24, 1975.

Peter C. Jones of Welbaum, Zook, Jones & Williams, Miami, for the petitioner.

Stuart L. Simon, County Attorney, Alan S. Gold and Stanley B. Price, Assistant County Attorneys, for the respondent.

BOYCE F. EZELL, Jr., Circuit Judge.

This cause is here on a petition for writ of certiorari filed October 12, 1973 wherein the petitioner attacks an ordinance passed by the Dade County Commission which rolled back the zoning on petitioner's property from 50 units to 23 units per acre and restricted the height to four stories.

The record in this cause is voluminous with transcripts, briefs, maps and photographs. From that record, including exhibits, and after having considered the briefs and oral argument in this cause the court finds as follows —

Petitioner, Victor R. Beauchamp, is the owner of 6.7 acres on Key Biscayne which said property is described on exhibits "A," "B" and "C" attached to the petition for writ of certiorari. The property is located on the corner of Crandon Boulevard and Ocean Lane Drive and extends to the east approximately 600 feet where it is adjacent to the high rise Commodore Club Apartments. To the east and southeast of the property are four high rise apartment buildings built to a height of 12 and 13 stories in a zone permitting 50 units to the acre. Also, in a southeasterly direction is a nine story high rise at 50 units to the acre. To the south is a six story high rise built at a density of 36 units per acre and an eleven story building built under a zoning classification which permitted 87 units per acre. Between these two buildings are two "models."

On the west is Crandon Boulevard and across Crandon Boulevard is a shopping area with many shops, including restaurants, bars and gas stations. In addition, to the northwest and directly adjacent to petitioner's property is a gas station. The property is bounded on the north by Crandon Park.

Petitioner has claimed that the roll back from 50 units per acre to 23 units per acre with a four story height limitation is arbitrary, unreasonable and discriminatory.

Under Florida law, the test for determining whether an action is arbitrary or unreasonable is whether the action taken is "fairly debatable." The burden is upon the property owner to show that the matter raised was not a fairly debatable issue before the legislative authorities.

The court has carefully considered this case in the light of numerous Florida and appellate decisions from other jurisdictions on that point and concludes that there is no fairly debatable issue. There is substantial evidence, in fact, the great weight of the evidence leads unerringly to the conclusion that the zoning classification of RU-4L is too restrictive, invalid, void, arbitrary, unreasonable, confiscatory and is unconstitutional as applied to this property

insofar as it attempts to roll back density below 33 units per acre and impose height restrictions less that what the county allowed the owners of 90 per cent of the vacant land in the total area to be rezoned under the ordinance.

The determination of whether this matter is "fairly debatable" is not based upon the fact that there may be testimony on both sides. It was said in LaSalle National Bank of Chicago v. County of Cook, 145 N.E.2d 65 (Ill. 1957) —

> "Much evidence was heard concerning traffic conditions, general character of the neighborhood, highest and best uses, valuations, etc. Each side produced expert witnesses to sustain its contentions. Difference of opinion does not render plaintiff's evidence unbelievable or require a finding that the unreasonableness of the ordinance is debatable."

In Watson v. Mayflower Properties, Inc., 177 So.2d 355 (Fla. App.2d 1965), cert. den. 183 So.2d 215 (1965), the court also rejected the "difference of opinion" equals "fairly debatable" argument and held that the zoning ordinance was not "fairly debatable" but was arbitrary, unreasonable and void as applied to the tract.

While it is clearly not a function of the court to zone, in Burritt v. Harris, 172 So.2d 820 (Fla. 1965), at page 823 the court stated —

> "It is not the function of a court to rezone property but the facts and circumstances of this case considered, it is our function to determine at what point zoning restrictions become arbitrary. The evidence having conclusively shown the petitioner's property to be unfit for residential purposes, it is our view that the petitioner's rights should be settled here by holding that the respondents are required to rezone petitioner's property to a classification not more restrictive than industrial A."

In Ray v. Dade County, 26 Fla. Supp. 7 (63-C-12507 Cir Ct. 1965), Judge James Kehoe was confronted with testimony in favor of the county and still found there was no "fairly debatable" issue. The court's decision cited City of Tulsa v. L. L. Swanson, 366 P.2d 629 (Okla. 1961), wherein that court said that the "fairly debatable" ruling must be based upon examination of the record to determine whether "the basic physical facts" are consonant with or against the clear weight of the evidence.

And in City of Miami v. Schutte, 262 So.2d 14 (Fla. App.3d 1972), the court stated at page 16 —

> ". . . However, in attempting to determine what constitutes 'fairly debatable,' the Supreme Court of Florida

has clearly indicated that the debate must be upon grounds that 'make sense.' City of Miami Beach v. Lachman, Fla. 1963, 71 So.2d 148 . . ."

Although zoning cases must be determined on their own "physical facts," Florida courts have held restrictive zoning ordinances unconstitutional when applied to analogous fact situations. See Watson v. Mayflower, supra; Manilow v. City of Miami Beach, 213 So.2d 589 (Fla. App.3d 1968), cert. den. 226 So.2d 804 (Fla. 1968); Kugel v. City of Miami Beach, 206 So.d 282 (Fla. App.3d 1968); Arnovitz v. Metro Dade County, 290 So.2d 536 (Fla. App.3d 1974); Stokes v. City of Jacksonville, 276 So.2d 200 (Fla. App.1st 1973); and City of South Miami v. Hillbaur, 312 So.2d 241 (Fla. App.3d 1975).

In the instant case, the property is a six acre tract of land practically surrounded on three sides by seven high rise apartment buildings and extensive commercial development. In addition, the commission allowed the owners of 90 per cent of the undeveloped land in the area to be rezoned to build to a density of 33 units per acre and height as allowed under PUD (Planned Unit Development) development.

These facts show that the roll back to RU-4L (23 units) in effect would make the subject property out of character with the existing structures. Furthermore, there are numerous high rise structures on Crandon Boulevard between the Beauchamp property and the state park on the south end of the island.

The effect of the commission's decision to roll back petitioner's property to RU-4L was spot zoning in reverse which was condemmed as arbitrary in Manilow v. City of Miami Beach, supra. This result is reached because the county has allowed the building of high rises around the subject property and only now asserts itself by rolling back this particular property.

The commission's plan to have high rises along the ocean with gradual reduction in height towards Crandon Boulevard fails to make sense, in that it has already allowed the development of several high rises along Crandon Boulevard and, in fact, by its agreement with the large property owners, the county would allow high rises well away from the ocean. In Stokes v. City of Jacksonville, supra, the court at page 204, while holding a zoning action unconstitutional recognized a situation, and stated —

"The sovereign, by its past activities has changed the character of the immediate neighborhood, and now refuses to recognize what it has created."

Also in Stokes, the court found against the city, seeing past the city's attempt to win against the property owners under the guise

of traffic conditions and the use of police power. The evidence in the instant case clearly showed that the traffic problem on Key Biscayne did not arise from residential development but was caused largely by weekend traffic and the large number of amusement facilities on Key Biscayne. The record reflects that steps are being taken by the county to alleviate that problem by other means.

Certainly, the agreement with the owners of 90 per cent of the undeveloped land in the area to be rezoned and the county, sets the boundaries by which necessity should be measured and where arbitrariness, discrimination and unreasonableness begins.

It is also clear, and petitioner does not contest otherwise, that the zoning ordinance taken as a whole is valid. Under the general police power the county has the power to limit density if it is "fairly debatable." This court praises the attempt by the Dade County board of county commissioners to plan for the future growth of Key Biscayne. This court further recognizes the authority of Dade County to reduce the density provisions in its zoning regulations in an orderly and comprehensive manner — provided that is accomplished in the interest of the public health, safety and welfare. Although the ordinance in general is valid, it is arbitrary and invalid as applied to petitioner's property.

It is accordingly ordered and adjudged that —

(1) The zoning ordinance of RU-4L is too restrictive, invalid, void, arbitrary, confiscatory and unconstitutional as applied to petitioner's property and has no relation to health, morals, safety or the public welfare.

(2) The zoning classification insofar as it restricts density below 33 units per acre and height below that which would be allowed under a PUD development is too restrictive, invalid, void, arbitrary, confiscatory and unconstitutional as applied to the property and has no relation to health, morals, safety and the public welfare, and petitioner's writ of certiorari is granted to the extent of allowing density not less than 33 units per acre and height restrictions no more limited than that which would be allowable under a PUD development.

(3) The board of county commissioners of Dade County shall rezone the said property within 30 days of the date of this decree to a classification not less restrictive than 33 units per acre and not less than the height which would be allowable under PUD development.

(4) This court shall retain jurisdiction for the purpose of enforcing this decree, and costs shall be taxed against the respondent.