The appellee, First Trust Company, trustee of the Firestone Estate, filed a bill of complaint October 25, 1944 against the appellant, City of Miami Beach, attacking a zoning ordinance, passed December 3, 1930, as unreasonable, arbitrary, confiscatory, and invalid, and containing a prayer that the defendant be enjoined from interfering with rental of rooms and apartments in the buildings now located on certain property or the construction upon it of hotels and apartment houses "now permitted to the property immediately adjoining it to the south * * *."
As described in the bill, the land involved is 8.13 acres in area, bounded on the east for seven hundred feet by the Atlantic Ocean and on the west by Collins Avenue. It is situated about midway between the north and south city limits. This property was bought for use as a country estate when the city was in its infancy, and there were erected on it, in pursuance of this plan, a three-story dwelling, a two-story gate lodge and garage, containing in all ten bath rooms, two kitchens, and so on, now rentable, so it was alleged, to year-round residents and seasonal visitors.
By the ordinance which is assailed the city was divided into use- and area-districts so that the lot fell in use-district described as "R-AA," and also called an "estate district," and within "Area District #3," so that it could be used only for single-family residences, and an area of 40,000 square feet would be required for each family. By the same ordinance all property existing southward fell in "`Area-District #15' and `Use-District R-E', also known as a `multiple-family district'" and consequently could be used for all residential purposes, including hotels and apartments, the requirement being only 2,800 square feet for each family unit if used for single-family homes. Continuing, the allegations were that in the intervening years the property for about three and a half miles southward, with the exception of a few plots, had been improved by the construction of apartments and hotels and that two hotels and one apartment house had been built on the property immediately adjoining that in question. It was charged that a mile and a half farther north there was also an "R-E" territory where apartments and hotels could be built. It was stated in the bill that the enactment of the ordinance by the city council (nearly fourteen years before the bill was filed) was not the "deliberated or considered" decision of that body, and it was asserted that "neither the public safety, the public health, the morals of the community, or the general welfare were * * * affected" by putting the plaintiff's property in the restricted district. The bill contained also averments of the monetary loss accruing because of inability to convert the property from use as a home site to use as a site for hotels and apartment houses.
The appellee's attempt to have the ordinance modified so that its property would become a part of the less restricted district, thereby making it adaptable as a location for hotels and apartments, was rejected *Page 683 
by the City Zoning Board of Adjustment.
The salient allegations of the bill were denied by the city, and it was relevant to these issues that testimony was taken. The paramount question thus presented is whether the ordinance enacted in 1930 imposing restrictions on the use of appellee's property has become, under existing circumstances, such an arbitrary and unreasonable exercise of municipal authority as to make it unconstitutional. City of Miami v. Rosen, infra.
The master in his report gave a resume of the pleadings and a painstaking digest of the contentions of the parties, and expressed the opinion that the questions of law involved should be governed by the decisions of this court in Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642, City of Miami v. Rosen,151 Fla. 677, 10 So.2d 307, and City of Miami Beach v. Ocean 
Inland Company, 147 Fla. 480, 3 So.2d 364. Based on the evidence which he had heard he made the terse recommendation that the court enter a final decree dismissing the bill with prejudice.
When the matter reached the chancellor on exceptions to the master's report, he had a different notion. He found that the ordinance as applied under present conditions was "arbitrary, unreasonable, oppressive, discriminatory * * *, confiscatory, * * * invalid, void and unenforceable."
At the outset the appellant challenges the propriety of the action of the chancellor in overriding the findings of the master who had heard all the testimony, there having been, so it is asserted, no showing that these findings were arbitrary or unsupported by the testimony the master chose to believe. We shall not dwell on this subject, for, despite considerable conflicting testimony on the part of witnesses who gave opinions, the fundamental basic facts on which a decision in this case will rest are clear and undisputed. As a matter of fact, the chancellor himself in his decision observed that there was "no material conflict or controversy * * * as to the facts shown by the evidence."
Parenthetically, we might point out that in a decision filed in this court April 22, 1949, Harmon v. Harmon, 40 So.2d 209, and not yet reported in State reports we passed upon the latitude which should be accorded a chancellor in overruling a master who had had the advantage over the chancellor of hearing the witnesses testify, and held, in effect, that his findings should not be disturbed unless the exceptant showed that he had clearly erred, and we thereby invoked the rule by which this court is bound in reviewing the order of a chancellor based on testimony taken in his presence.
The primary question is a mixed one of law and fact, Forde v. City of Miami Beach, supra, and the essential facts are not in dispute; so we shall proceed to determine whether chancellor or master was correct about the governing law.
As alleged in the bill, the property involved was occupied as a residence for more than a decade after the restrictions were imposed, until 1942, and meanwhile the population of the City of Miami Beach had increased six-fold. During this time, as we have said in analyzing the bill, the area adaptable to the location of hotels and apartment houses had built up almost solidly with structures of that nature. The steady march of these buildings was halted abruptly at the south line of the lot in question. Doubtless all these improvements and the vast increase in population resulted in the amount of traffic growing apace. It is argued that the changes wrought by these developments have so affected the character of the property that it, too, should now be adaptable to the construction of hotels and apartments. At a glance this position is plausible, but a careful examination of it convinces us that it does not possess the logic which would lead us to conclude that the ordinance had become unconstitutional as applied to the premises.
When the predecessor of appellee decided upon a site for his home, the property in question must have been attractive indeed, for he erected on it a residence of large proportions at great cost. Then the zoning ordinance was enacted providing *Page 684 
that the area up to its south line should be available for the construction of hotels. Doubtless the property would not now have the same appeal as a home site, but for fourteen years, and until the bill of complaint in this case was filed, what transpired in the way of construction was only what was contemplated when the ordinance was passed and that territory declared usable as a location for hotels. The question is: Should the ordinance now be held invalid because what was expected by the city, and known by the appellee and his predecessor for that long period to be expected by it, came to pass?
Changed conditions may justify or command a revision of zoning restrictions, but it seems to us that in this case no such principle need be applied because the changes which have occurred resulted from a realization of the plan which the authorities originally adopted. The progress which is seen today must have been anticipated fifteen years before because an area which must then have appeared extensive was made available for the construction of hotels and apartments. Who is there to say that this progress has not resulted from this same ordinance but has been made in spite of it?
We do not see the force either of the argument that because of the proximity of the apartment and hotel area and the existence of two hotels and an apartment next door, the lot involved should be incorporated into that district. As we have written before in City of Miami Beach v. Ocean Inland Company, supra, a line must be drawn somewhere, and wherever it is placed it is bound to have the appearance of arbitrariness. If the argument is sound today that the ordinance should be revised because of the apartment and hotels immediately to the south and this property is allowed to be so improved, then tomorrow the same argument would be apposite as to the property immediately to the north. If this reasoning were followed, and the courts were to substitute their judgment for that of the city officials which we have held cannot be done, Forde v. City of Miami Beach, supra, then by a sort of judicial erosion a zoning ordinance would eventually be completely dissipated.
We have already recognized, in City of Miami Beach v. Ocean 
Inland Company, supra, the peculiar qualities of the community of Miami Beach as an attraction to visitors. That is its veryraison d'etre. We said there that a case like this, affecting a city like that, does not involve a matter of public morals or of public safety or of public health. The question of general welfare obtains, and the general welfare of the city, considered in this light, is just as manifest today as it was when the residence on this property was constructed nearly a score of years ago when this fabulous city was only a small town of 6,000 inhabitants.
Summarizing, we believe, as we did when we adopted the opinion in City of Miami Beach v. Ocean Inland Company, supra, that the peculiar characteristics and qualities of the City of Miami Beach justify zoning to perpetuate its aesthetic appeal, and that this is an exercise of the police power in the protection of public welfare. In considering the facts of the instant controversy we have reviewed the rules set down in that same case for judging the soundness of the positions taken by the parties litigant — that is, that there should be no substitution by the court of its judgment for that of the city council, that a presumption exists favoring the validity of the ordinance, and that the intent of the legislative body will be supported if it be even fairly debatable. In the application of all these rules we feel little hesitancy in deciding that the master was correct in the first instance.
We see no occasion for the court to interfere with the judgment exercised by the city authorities, nor justification for the holding that the ordinance, as presently applied to the particular territory, is unconstitutional. So the decree is reversed.
In view of this conclusion, the matter is remanded to the chancellor with directions that he review the order taxing all costs against the city which did not prevail in the lower court but does prevail here. *Page 685 
ADAMS, C.J., and TERRELL, SEBRING and HOBSON, JJ., concur.
CHAPMAN and BARNS, JJ., dissent.