183 So.2d 219 (1966)
E.G. FOGG, III, and A.S. Fogg, d/b/a A. & E. Investment Company, Appellants,
v.
CITY OF SOUTH MIAMI, a Municipal Corporation, Appellee.
No. 65-369.
District Court of Appeal of Florida. Third District.
February 1, 1966.
Rehearing Denied March 9, 1966.
William W. Charles, Miami, for appellants.
George B. Hardie, Jr., South Miami, for appellee.
Before HENDRY, C.J., and TILLMAN PEARSON and CARROLL, JJ.
TILLMAN PEARSON, Judge.
The appellant owns property in the City of South Miami. The property is zoned for business, but its C-1 classification is subject to a provision which prohibits "a drive-in operation."[1] The appellant was denied a building permit to build a dairy products retail store because the type of store planned was one where the customer drives in and purchases the products without getting out of his car. Appellant filed a complaint in chancery seeking a declaration that: (1) the provision against a "drive-in operation" was void because it was arbitrary and unreasonable, and (2) the operation of a Farm Store retail dairy establishment is a C-1 Business District usage under the zoning ordinance. The chancellor held that the ordinance was valid and that a Farm Store was prohibited by the ordinance. This appeal is from that decree. We reverse upon a holding that the ordinance, as applied to this particular business, has no relation to public welfare.
*220 The chancellor defined a "drive-in operation" as a place where people can drive up in an automobile and be served without having to alight from the automobile. We find nothing in this record upon which this definition could be predicated, but without a doubt, it is a good one. Cf., State ex rel. Spiccia v. Abate, Ohio App., 196 N.E.2d 346 (1964), aff'd 2 Ohio St.2d 129, 207 N.E.2d 234 (1965). We hold that the chancellor did not err in holding that the ordinance purported to exclude all business activities where the customer does not alight from his car.
The record indicates that the City made no contention that public safety or public health was involved, but relied entirely upon the opinion of its expert witnesses that the provision prohibiting "drive-in operations" contributed to the public welfare of the City by providing a sort of "continuity" to the retail business section of the City. It was urged that all of the merchants benefit by a requirement that the customer alight from his car to make a purchase because once the customer is out of his car he is a prospective customer of all the merchants.[2]
The chancellor set forth the essential question thus presented:
"Now, the only question in the world here is may the City constitutionally pass an ordinance which limits this particular plaintiff from building a drive-in on this area because to build a drive-in in the area would react to the disadvantage of all business people located within the C-1 zone and would tend to detract from the development of the zone because it would cause other people not to want to develop retail stores there because they know that it's easier for somebody to drive in and buy their milk than it is by walking in. This is the real constitutional question involved. Can it be done constitutionally?
"The City's position, it's finally disclosed, is that people who buy, invest and build retail stores in the C-1 zone understand that when somebody goes down there to buy a pair of shoes for the kids, that while there they walk next door to the drug store and buy some liniment, and then while there they walk next door and go into the little retail store and buy a gallon of milk, and that this is what they call continuity of something or another, and this is very advantageous. I assume they are talking about to the business people because it depends on the woman whether *221 she wants to go next door or drive into the drive-in. So they must be talking about economics and regulation of competition through zoning. This is really what you're saying."
While we agree with the chancellor's statement of the question, we must disagree with his answer.[3] The "public welfare" with which the City and the courts must be concerned is the welfare of the whole community. A benefit or anticipated benefit to a special group within the City is not enough. Burritt v. Harris, Fla. 1965, 172 So.2d 820; City of Miami Beach v. Seacoast Towers-Miami Beach, Fla.App. 1963, 156 So.2d 528; cf., Rabin v. Conner, Fla. 1965, 174 So.2d 721.
It was disclosed that the City made exceptions by permitting drive-in operations in the area in question for a gasoline service station, a bank and a savings and loan business. To permit drive-in operations for such businesses and deny it to a dairy products store would appear to be arbitrary and discriminatory. This is so, because as stated above, as to such businesses the City made no showing that the prohibition against drive-in operations had any relation to the health, morals and general welfare. This is not to say that as to some other businesses authorized to be conducted in the area, as to which a drive-in operation would bring about excess traffic, noise in late hours, or tend to promote the gathering of unsavory elements or rowdyism, the City would not then have sufficient reasons of public policy to enforce the restriction against such drive-in operations. Clearly the proposed dairy product store drive-in operation was not shown to be in that category.
Having concluded that the exclusion of the use in question, as to plaintiff's business, has no substantial relation to the general welfare, we hold that the chancellor erred in holding that the prohibition against drive-in retail dairy products stores was not invalid. Wherefore, we reverse the decree in part and remand the cause for the entry of a decree in accordance with the views herein expressed.
Reversed and remanded.
HENDRY, Chief Judge (dissenting).
I cannot concur with the majority opinion. The plaintiff has attacked the validity of the ordinance, not merely as it applies to any specific property, and the wisdom of the municipality in enacting this ordinance for the general welfare of the community has been shown to be debatable. Therefore, it is my view that the chancellor's decree should be affirmed under the "fairly debatable" rule.
NOTES
[1] "(1) Use C-1 Business Districts. No building or land shall be used and no building shall be hereafter erected, constructed, reconstructed or structurally altered which is designed, arranged or intended to be used or occupied for any purpose, unless otherwise provided for, excepting for one or more of the following uses, none of which shall consist of a drive-in operation." [Thereafter, approximately seventy types of businesses are enumerated, including banks, barber shops, beauty parlors, broadcasting stations, conservatories, dairy products, offices, parking-commercial, reducing salons, restaurant, and professions.]
[2] Expert witness Charles L. Crumpton testified for the City:

"The C-1 zone, as it has been, is the highest business zone in the City of South Miami and as such is your major retail zone. Therefore it is elicited to contribute to the community via allowing retail facilities in it, and as retail facilities you need continuity in retail development for one store shops and with continuity of physical structures, they also will shop in others that are adjacent thereto. Therefore one store helps and benefits the other store, which helps and benefits the community's welfare.
"A drive-in operation as such interrupts this continuity by its very nature. Therefore the group of stores on one side of a drive-in operation is put at a disadvantage to the group of stores on the other side of the operation and vice versa. Therefore, in my opinion, it's a detrimental type of operation to your highest zoning classification of business use."
Expert witness Carl L. Ebel testified for the City:
"Well, the purpose of prohibiting drive-in operations, regardless of what the operation is, is pretty much what Mr. Crumpton has testified to, that the retail business district such as a C-1, which, even though you have parking facilities in front of the stores, it's necessary for the individual to alight from the car and to enter the establishment in order to make his purchases. You usually have in these instances some communication between various establishments, some pedestrian communication once this person has left his car."
[3] The chancellor held:

"The pivotal question before the Court (as defined by the pleadings and the testimony presented thereon) is whether or not a Zoning Ordinance which has for its purpose the protection of the value and usefulness of urban land  or more particularly, the promotion of the communities economic prosperity by the establishment of commercial development patterns within a business district  is related to the general welfare. If so, it is a valid exercise of the municipal power. There is authority in this State for the proposition that such an Ordinance is reasonably related to the general welfare. The question here is not whether the Court considers that it would be more convenient for a busy housewife to be served in her car in the zone under discussion than it would be for her to alight from her car and trudge into the store to purchase her family's daily needs.
"The ordinance under attack meets the `fairly debatable' rule. The effect of this Ordinance on the zoning plan and the economic welfare of the City  as well as its effect upon the housewife's quest for milk  is for the elected officials of the City to decide. The Courts should not invade the authority of those elected officials absent a paramount constitutional right and duty to do so. Such right and duty have not been shown in this case."