318 So.2d 214 (1975)
G.M. DAVIS et al., Appellants,
v.
Sam SAILS, Appellee.
No. X-29.
District Court of Appeal of Florida, First District.
August 6, 1975.
*215 Norman J. La Coe, Gainesville, for appellants.
Richard T. Jones, Jones & Ritch, Gainesville, for appellee.
BOYER, Chief Judge.
Appellants, Board of County Commissioners of Alachua County and defendants in the trial court, appeal from a final judgment which ordered rezoning of certain land in that county.
*216 Typically, zoning controversies revolve around a conflict between individual rights of ownership, traditionally deemed to be paramount in democratic societies, versus public interests in the property of an individual, traditionally paramount in totalitarian societies. Florida courts have endeavored to achieve a balance between such conflicting interests, while nevertheless protecting the rights of the individual property owner.
Sub judice, the appellee property owner, plaintiff in the trial court, owns a parcel of land consisting of 37 1/2 acres in an urbanized section of Alachua County, west of the Gainesville city limits. There are several sinkholes on the property. It is bisected by a power line, bordered on the west by Tower Road, a two-lane north-south country road, on the south by a school site, on the east by lands presently being developed as a mobile home subdivision, and on the north by land owned by the Gainesville-Alachua County Regional Utilities Board, the intended purpose of which is the erection and operation of a sewage treatment plant with a sludge field on the property. Appellee, whose property was zoned agricultural, made application for a change of zoning to R-2, permitting no use except low density multi-family apartments. Defendants, sitting as a zoning authority, denied the application after a public hearing. The property owner thereafter filed suit, alleging that the refusal by the defendants to rezone the property was arbitrary, unreasonable and confiscatory. At the trial four experts in the field of planning testified. Mr. Frank Blandford, a planning consultant retained by plaintiff, stated that the most appropriate use of the property was multi-family, and that medium density of about 15 units per acre would be appropriate. Mr. Harlan Hanson, who at the time of the application for rezoning was a planning consultant for Alachua County, stated that the site should have multi-family, low-denisty zoning. He recommended against the site being zoned as single family. He further stated that the site could be developed as a planned unit development (PUD, a combination of single-family and multi-family units) but that he would not recommend it. Mr. Richard Tarbox stated that R-2 zoning would be proper for the property and that the site should not be developed for single-family use because of the sinkholes, the power line easement and the low lying areas on the property. He stated that the site was not practical for a PUD. According to Mr. Tarbox, the plan submitted by the land owner would call for 7.6 gross units per acre which is within R-2 zoning and that the County Planning staff had approved this plan. Mr. Norman Bowman, Director of the City of Gainesville Department of Community Development, testified by deposition that the original 1970 Land Use Plan designated the general area of the subject property as a combination or optional classification where either a single-family category could be retained or a multi-family category of eight units could be utilized. The fourth expert, Mr. Norwood Hope, opined that he would develop the property as multi-family on the northeast and southeast portions of the property and either have a buffer zone on the road side or a single-family area along Tower Road only. He considered a PUD as appropriate only if the density were 12 units per acre and that the majority of the property could be used for multi-family dwellings. It was stipulated that another witness, Mr. A.T. Douglas, would testify the same as Mr. Hope. Of the three defendant County Commissioners who testified, one, Commissioner Jack Durrance, stated that it was his thinking that the Board wanted to preserve single-family zoning along Tower Road. Mr. Robert Holton, Zoning Administrator of Alachua County, testified that the request contained in the zoning application would be an appropriate use of the site and would conform to the Master Land Use Plan. Mr. Robert Roundtree testified that the proposed sludge farm which was to be located immediately north of the subject *217 property would give off an odor of wet commercial fertilizer when the sludge became wet. Other testimony was adduced which need not be here recited.
After hearing the foregoing testimony, the trial judge withheld his ruling, advising counsel for both parties that it appeared to him that the most appropriate use of the property would be a PUD, with single-family housing fronting on Tower Road and apartments further back on the site away from the road. The Judge further recommended that a new zoning application be submitted requesting a PUD classification. That recommendation was followed, whereupon the County Commissioners voted to rezone the property as a PUD but with an overall density of only five units per acre. The landowner thereupon applied to the Court to set aside the PUD or otherwise increase the density because the five units per acre requirement was unacceptable. The final judgment here appealed was thereupon entered wherein the trial court ruled that agricultural or single-family zoning was inappropriate and the defendants (appellants here) were enjoined from enforcing the PUD which had been approved for the property and were ordered to rezone the property to a zoning classification "more liberal than single-family residential with a density consistent with Section 3 of the Zoning Regulations of Alachua County, Florida and the Land Use Plan for Alachua County".
Appellants urged those points which are customarily presented by zoning authorities in zoning cases, among them being that the judgment of the court is contrary to the manifest weight of the evidence and that the trial judge ignored, violated or overlooked the "fairly debatable rule".
The rules of law applicable to zoning procedures and cases are not, in and of themselves, complicated. However, the application of those rules are often the source of extended controversies. In this opinion we will attempt to discuss and explain the rules of law most often used and abused, to the end that, hopefully, future litigation and resulting appeals might be obviated.
The law is so well settled as to require no citations of authority that a city or county has the right and power, within the confines of applicable enabling statutes, to adopt zoning ordinances or regulations. Further, such zoning ordinances or regulations are, like other legislative acts, presumed valid. Two other rules or law, which sometimes become confused and intertwined, are the "substantial relationship rule", and the "fairly debatable rule". The substantial relationship rule is substantive law, and may be simply stated as follows: In order for a zoning ordinance or regulation to be valid, it must have come substantial relationship to the promotion of the public health, safety, morals or general welfare. When correctly applied, this rule is not in any manner modified by the fairly debatable rule. The latter rule, being a rule of procedure or application, may be simply stated as follows: If the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts. Of course, it is always a matter for the court to determine whether a zoning authority acted reasonably or fairly or whether capriciously or arbitrarily. The fairly debatable rule applies to the application of the ordinance and does not modify the requirement that the ordinance itself and the application thereof must have a reasonable relationship to the health, safety, morals or general welfare.
The general law, which is also the law of Florida, as to the validity of a zoning ordinance or classification, as applied to a particular parcel of property, is succinctly stated in Volume 101 C.J.S. Zoning as follows:
"The justification for zoning enactments is the greater benefit which accrues *218 therefrom to the public as a whole, or the paramount interest of the public welfare and the realization that private interests must sometimes be subordinated to the public good, or, * * * it must be found in some aspect of the police power asserted for the public welfare. Such enactments, however, are subject to limitations on the police power, and cannot validly be extended beyond the accomplishment of purposes rightly within the scope thereof.
"To be valid, they must be for the superior interest and rights of the public, or they must be predicated on a public interest and founded on a need of the community, and be conducive to, or subserve, the public welfare, or be for the public good. They must have a rational relation to the protection of the basic interest of society, and a public benefit must be derived from them. They are invalid if they disclose no purpose to prevent some public evil or fill some public need.
"In order to be valid as a proper exercise of the police power, especially where their application will cause a destruction of property values, zoning laws, ordinances, by-laws, regulations, and restrictions must advance, promote or tend or be designed to promote, the public health, safety, morals, or general welfare, or be reasonably necessary for the protection of the public health, safety, comfort, morals, or welfare, or have or bear a real and substantial relation to public health, safety, morals, or the general welfare; and it has been held that such enactments must bear the required relation with respect to the particular premises to which they are applied.
* * * * * *
"The required relationship of the zoning ordinance or regulation must be real and not feigned. The law will not tolerate an invasion of the right of property under the guise of a police regulation in the professed interest of the public health or safety when it is manifest that such was not the object of the regulation. Hence, a restrictive ordinance which bears no material relation to the public health, safety, morals, or general welfare cannot, under the guise of a zoning regulation, either confiscate property or inflict a substantial injury on the owner thereof." (101 C.J.S. Zoning § 16; underlining added)
The test as to the validity of a zoning ordinance is not whether it may on some future date bear the required relation to the public welfare, but rather whether it does so now. West Bloomfield T.P. v. Chapman, 351 Mich. 606, 88 N.W.2d 377; Gust v. Canton T.P., 342 Mich. 436, 70 N.W.2d 772; Barney & Casey Co. v. Town of Milton, 324 Mass. 440, 87 N.E.2d 9.
In City of Miami Beach v. 8701 Collins Avenue, Sup.Ct.Fla. 1953, 77 So.2d 428, the Supreme Court enunciated the polestar of the law applicable to zoning regulations, citing numerous cases and authorities, as follows:
"It is well settled that a zoning ordinance to be valid must bear a substantial relation to the public health, safety, morals or general welfare." (77 So.2d at page 430)
It is clearly the duty of the court to determine the validity of zoning ordinances as applied to a specific parcel of property. This proposition was enunciated by the Supreme Court of Florida in a 1949 case, City of Miami Beach v. First Trust Co., 45 So.2d 681. In that case, a parcel of property on Miami Beach had been zoned for single family residences. In due course, adjoining lands were used for multiple family purposes, including hotel and apartment houses. Upon the city refusing to rezone the plaintiff's property for multi-family *219 residences, suit was commenced, whereupon the chancellor ruled with the city. Appeal was taken to the Supreme Court of Florida, which initially affirmed the chancellor. Upon petition, rehearing was granted, whereupon Justice Terrell stated as follows:
"When the case was before us initially the proposition that got the ear of the Court was the insistence by appellant [City] that the ordinance was presumptively valid, that if fairly debatable the action of the city in passing it should be upheld and the Court should not substitute its judgment for that of the City Council. * * * but on thorough review of the case on petition for rehearing, I am convinced that our judgment was erroneous. When, as here, the constitutional rights of the citizen are assaulted, I do not think the Court can in the manner shown bypass its duty to adjudicate them. * * *" (45 So.2d at page 688)
The court thereupon reversed the lower court, holding that under the circumstances of that particular case the subject ordinances constituted confiscation, observing:
"* * * There is no showing that the zoning plan of the city will be jeopardized or materially affected by removal." (45 So.2d at page 688)
In the case sub judice, as heretofore observed, there was expert testimony before the court that the zoning plan of the county would not be jeopardized nor materially affected by the granting of appellee's application.
In an even earlier case, Ex parte Wise, Sup.Ct.Fla. 1940, 141 Fla. 222, 192 So. 872, the owner of a parcel of property which was zoned for residential purposes, but located in an area wherein a number of surrounding properties were used for light businesses, undertook to use his property for the packaging and selling of citrus fruits in defiance of the zoning ordinance. He was thereupon arrested, convicted and sentenced for violation of the zoning ordinance. The Supreme Court of Florida there held the ordinance valid generally, but invalid as applied to the subject owner, stating as follows:
"The ordinance is assailed here on the ground that it is arbitrary, discriminatory, unreasonable, unconstitutional and void." (192 So. at page 873)
* * * * * *
"This Court, speaking through Mr. Justice Ellis, in Pounds v. Darling, 75 Fla. 125, 77 So. 666, 668, L.R.A. 1918E, 949, pointed out the prerequisites of a valid ordinance, and said: `* * * To be valid an ordinance must be reasonable and not in conflict with any controlling provision or principal of law (Waller v. Osban, 60 Fla. 268, 52 So. 970); should it be within the powers expressly or impliedly conferred (Hardee v. Brown [56 Fla. 377, 47 So. 834], supra; Malone v. City of Quincy, 66 Fla. 52, 62 So. 922, Ann.Cas. 1916D, 208; Ferguson v. McDonald, 66 Fla. 494, 63 So. 915), and if any doubt exists as to the extent of a power attempted to be exercised by a municipality out of the usual range, or which may affect the common-law right of a citizen, it is to be resolved against the municipality (Anderson v. Shackleford, [74 Fla. 36], 76 So. 343 [L.R.A. 1918A, 139]).'
"An ordinance when in force should not in its application deprive the owner of a reasonable use and enjoyment of his own property, thereby depriving him of his property without due process of law or just compensation. The ownership of property is guaranteed by the State and Federal Constitutions. Frequently it becomes necessary for the property and use thereof to yield to constitutional regulations. While a municipality by ordinance may regulate or limit the use of property in behalf of the general welfare of its citizens, such action is authorized only in a constitutional manner. See City of Palmetto v. Katsch, 86 Fla. 506, *220 98 So. 352; Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153." (192 So. at pages 874 and 875)
* * * * * *
"It is a well-recognized principle of law that a statute or ordinance may be valid as applied to one set of facts, though invalid in its application to another set of facts." (192 So. at page 875)
* * * * * *
"We therefore hold that the Zoning Ordinance, supra, is valid, but in its application to the building of the petitioner the same is on this record unreasonable and unenforceable." (192 So. at page 876)
Burritt v. Harris, Sup.Ct.Fla. 1965, 172 So.2d 820, is a landmark case in Florida. There the Supreme Court had occasion to pass upon the validity of a zoning ordinance of Duval County as applied to a particular parcel of property. In that case, the Circuit Judge dismissed with prejudice a complaint brought by the property owner attacking the zoning of his property. This Court, in Burritt v. Harris, Fla.App.1st 1964, 166 So.2d 168, affirmed the action of the Circuit Court, Judge Rawls dissenting. Certiorari was taken to the Supreme Court, where the action of the Circuit Judge and the decision of this Court were quashed, the Supreme Court, speaking through Justice Caldwell, saying:
"* * * The Circuit Court dismissed the suit and the District Court of Appeal affirmed on the ground that the zoning of the property for residential use was `fairly debatable' and the petitioner had failed to show such zoning to be arbitrary. We must disagree." (172 So.2d at page 822)
* * * * * *
"It is not established that the zoning restriction here imposed bears substantially on the public health, morals, safety or welfare of the community * * *" (172 So.2d at page 822)
* * * * * *
"The constitutional right of the owner of property to make legitimate use of his lands may not be curtailed by unreasonable restrictions under the guise of police power. The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety or welfare. If the zoning restriction exceeds the bounds of necessity for the public welfare, as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights." (172 So.2d at page 823)
It might be well at this juncture to discuss a temporary hiatus in the law which followed the Burritt decision. In Lawley v. Town of Golfview, Fla.App. 2nd 1965, 174 So.2d 767, it was held that the Burritt case had "created an innovation in the zoning law of Florida by casting on the zoning authority the burden of establishing by a preponderance of evidence that the zoning restrictions under attack `bear substantially on the public health, morals, safety or welfare of the community' if the ordinance is to be sustained." Following the Lawley decision, several cases held the burden upon the zoning authority to prove reasonableness of its actions. However, the Supreme Court, in City of St. Petersburg v. Aiken, Sup.Ct.Fla., 217 So.2d 315, recited that Burritt v. Harris had "been erroneously construed as creating `an innovation in the zoning law of Florida'." It is important to note, nevertheless, that the Supreme Court, in City of St. Petersburg v. Aiken, affirmed the Burritt decision and the ultimate holding in that case, the Court stating:
"The Burritt decision, * * * was simply that the zoning restriction `exceeds the bounds of necessity for the public welfare' and was therefore arbitrary and invalid." (217 So.2d at page 316)
* * * * * *

*221 "The final conclusion in Burritt, in any event, fully accords with the earlier cases." (217 So.2d at page 317)
So it is that the Burritt case, as emphasized in City of St. Petersburg v. Aiken, supra which simply affirms the prior law of this State and, indeed, the nation, confirms the polestar as to determining the validity of zoning ordinances, to-wit: That zoning restrictions may not exceed the bounds of necessity for the public welfare.
Another case which summarizes virtually all of the law relative to the controversy sub judice, and which is factually quite similar, is Watson v. Mayflower Property, Inc., Fla.App. 2nd 1965, 177 So.2d 355 (certiorari denied by Supreme Court, 183 So.2d 215). In that case, the plaintiff land-owner owned a parcel of property, zoned for single family dwellings, bordered by the Atlantic Ocean on the east and Mayan Lake on the west. The property to the south was zoned for multiple family use. The complainers, who sought to uphold the city's zoning classification, were the owners of single family residences across Mayan Lake to the west of the subject property. The city, in defending its position, urged the same position as the appellant in the case sub judice, to-wit: That it had the power to zone, that the court could not substitute its judgment for that of the governmental agency, and that the zoning under attack was "fairly debatable" and, therefore, not subject to judicial review. The city, in its brief in that case, alleged two points involved, to-wit:
"`Did the lower court erroneously hold that the "fairly debatable" rule was inapplicable to sustain the zoning ordinance when the evidence was such that reasonable men could differ in their conclusions, and where the evidence did not conclusively demonstrate equivalent confiscation of private property interests for the benefit of adjoining landowners?'
"and
"`Is a zoning ordinance which permits an orderly neighborhood development according to a comprehensive zoning plan, and allows a reasonable economic use of such property while protecting adjoining landowners from the inevitable consequences of over-intensive development, invalid merely because it denies the highest economic gain to the plaintiff?'" (177 So. at page 358)
On the other hand, the owner contended as quoted in the opinion, as follows:
"`It was plaintiff's position at trial that the present zoning as it relates to its property was unconstitutional, and denied to it the highest and best use of the property, the zoning having no substantial relation to the public health, welfare or safety.'" (177 So.2d at page 358)
In that case, the chief building inspector testified that in his opinion the application for rezoning should have been granted although there was "no physical reason why the property could not be used for the purposes for which it was zoned". There was other testimony that the zoning sought did not affect safety or public health and an appraiser testified that the property was of much greater value if zoned as requested than as then zoned. The chancellor held that the zoning classification restricting the use of the subject property to single family dwellings was arbitrary and unreasonable and had no substantial relation to the public health, safety or general welfare, and insofar as it applied to plaintiff's land, was unconstitutional. The District Court of Appeal extensively quoted the chancellor's order with approval. Because of its peculiar applicability to the case sub judice, portions of that order and opinion are quoted as follows:
"As a preface, it is stated in 35 Fla.Jur., Zoning Laws, § 10, that, `The right of an owner to devote his land to any legitimate use is properly within the terms of *222 the Constitution and the legislature may not under the guise of the police power impose unnecessary or unreasonable restrictions on that use. To be valid, a zoning ordinance must have a substantial relation to the public health, saftey, morals, or general welfare. The courts usually will hold a zoning ordinance invalid when it clearly appears that the restrictions are arbitrary and unreasonable and have no substantial relation to health, safety, morals, or the general welfare.'
"In City of Miami Beach v. Lackman, Fla. (1953) 71 So.2d 148, 152, it was said that, `An ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity.' And in Sarasota County v. Walker, Fla., (1962) 144 So.2d 345, the statement appears that, `If the question of the validity of a zoning ordinance is fairly debatable, the court should not substitute its judgment for that of the enacting governmental agency.'" (177 So.2d at page 359; underlining added)
* * * * * *
"* * * The highest and best use for the property is for hotels and apartments. The present zoning * * * has reduced the value of the land from approximately two million dollars to a half million dollars. The zoning plan of the city will not be jeopardized or materially affected by removing the zoning restrictions. Due to the changed conditions the validity of the ordinance is not fairly debatable. It was not shown that the public health or safety would be endangered * * *" (177 So.2d at page 361; underlining added)
* * * * * *
"* * * in City of Miami Beach v. Lachman, supra, the statement appears that, `While Village of Euclid, Ohio v. Amber Realty Company [272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016] approved the zoning and segregation of private property into residential, business, and industrial districts, it was equally emphatic that if such zoning did not have some substantial relation to the public health, safety, morals, and general welfare, it would be held to be arbitrary, unreasonable and unconstitutional. There is no warrant whatever in this, or any other, case to support the thesis that zoning boards are infallible and that any kind of a zoning proposition they promulgate will be upheld. In other words, zoning boards are in the same category as all other administrative boards. Their ordinances and regulations will be given serious consideration and their judgments great weight, but where it is conclusively shown that they deprive one of his property without due process or otherwise infringe on State or Federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable and will be stricken down.' Also see Tollius v. City of Miami, Fla., 96 So.2d 122; City of Miami Beach v. Prevatt, Fla., 97 So.2d 473." (177 So.2d at pages 361 and 362; underlining added)
In Fogg v. City of South Miami, Fla. App.3rd 1966, 183 So.2d 219, the court considered a case wherein a parcel of property was zoned in a classification to permit business but to prohibit a "drive-in operation". The owner of the property attacked the zoning as being arbitrary and unreasonable and, of course, the city claimed it to be within their power and "fairly debatable". The chancellor agreed with the city and the property owner appealed. The District Court of Appeal reversed, stating:
"We reverse upon a holding that the ordinance, as applied to this particular *223 business, has no relation to the public welfare." (183 So.2d at page 219)
The Appellate Court quoted the chancellor's statement of the issue as follows:
"`The ordinance under attack meets the "fairly debatable" rule. The effect of this Ordinance on the zoning plan and the economic welfare of the City  as well as its effect upon the housewife's quest for milk  is for the elected officials of the City to decide. The Courts should not invade the authority of those elected officials absent a paramount constitutional right and duty to do so. Such right and duty have not been shown in this case.'" (183 So.2d at page 221)
The Appellate Court then stated:
"While we agree with the chancellor's statement of the question, we must disagree with his answer. The `public welfare' with which the City and the courts must be concerned is the welfare of the whole community. A benefit or anticipated benefit to a special group within the City is not enough. Burritt v. Harris, Fla. 1965, 172 So.2d 820; City of Miami Beach v. Seacoast Towers  Miami Beach, Fla.App. 1963, 156 So.2d 528; cf., Rabin v. Conner, Fla. 1965, 174 So.2d 721." (183 So.2d at page 221; underlining added)
* * * * * *
"Having concluded that the exclusion of the use in question, as to plaintiff's business, has no substantial relation to the general welfare, we hold that the chancellor erred in holding that the prohibition against drive-in retail dairy products stores was not invalid." (183 So.2d at page 221)
Another case which, factually, is very similar to the case sub judice is Kugel v. City of Miami Beach, Fla.App. 3rd 1968, 206 So.2d 282. That case is peculiarly applicable inasmuch as there the court considered a situation wherein, as here, the character of the subject neighborhood was in transition. In Kugel, the owners, whose property was zoned for residential use, attacked the zoning as being so restrictive as to be unconstitutional. The chancellor entered a decree in favor of the city, finding that the city had acted reasonably in determining a demarcation line between business properties and the property owned by the plaintiffs. The Appellate Court stated the question before it as follows:
"On this appeal we are presented with the question of whether such restrictive zoning, as that alleged in the complaint and proved in the record, can be justified upon the ground that a line must be drawn somewhere and that since the legislative authority has drawn that line, the courts ought not change it." (206 So.2d at page 283)
In responding to that question, the Appellate Court stated:
"The Supreme Court of Florida set out the applicable reasoning in Burritt v. Harris, Fla. 1965, 172 So.2d 820 at 823:
`The constitutional right of the owner of property to make legitimate use of his lands may not be curtailed by unreasonable restrictions under the guise of police power. The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety or welfare. If the zoning restrictions exceeds the bounds of necessity for the public welfare, as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights.'
"We hold that the zoning of appellants' property is arbitrary and unreasonable and the same amounts to confiscatory regulation of appellants' property." (Citing numerous authorities; 206 So.2d at page 284; underlining added)

*224 * * * * * *
"Appellee also suggests that this Court should treat the residential zoning of appellants' property as an exercise of the legislative authority of the city council, and that as such, it falls under the fairly debatable rule adhered to by this Court in the City of Miami v. Zorovich, Fla. App. 1967, 195 So.2d 31. In that case, we held that zoning regulations which promote the integrity of a neighborhood and preserve its residential character are related to general welfare of the community and are a valid exercise of the legislative power. See also Parking Facilities, Inc. v. City of Miami Beach, Fla. 1956, 88 So.2d 141; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442. The present case does not come within the bounds of this rule because the record clearly reveals that to change the residential zoning of appellants' property will in no way act to destroy the integrity of a neighborhood. The character of the property has already been changed by other actions of the municipality. The zoning regulation in question, as applied to appellants' property, is arbitrary and unreasonable and cannot be characterized as `fairly debatable.'" (206 So.2d at page 285)
As in the Kugel case, the arbitrary and unreasonable application of the zoning classification sought by appellants to be imposed on the subject property is not fairly debatable. The character of the subject property and other properties in the area have already been changed by other zoning actions of appellants, viz: the adjoining mobile home area, sewage treatment plant and sludge farm.
This point was emphasized in Metropolitan Dade County v. Pierce, Fla.App.3rd 1970, 236 So.2d 202, wherein the Appellate Court had occasion to consider a case wherein the Circuit Court had reversed an order of the zoning authority refusing to rezone a parcel of property to permit multiple family dwellings. The Appellate Court affirmed the lower court's finding that the owners desired use was compatible with uses which the county had already permitted in the area and that denial of the application to rezone had no relationship to the public health, morals, safety or welfare of the community. The portion of the case which is peculiarly applicable to the case sub judice is that portion wherein the Appellate Court discusses the "fairly debatable" rule, the Court saying as follows:
"Since Village of Euclid v. Amber [Ambler] Realty Co., 272 U.S. 365, 47 Sup. Ct. 114, 71 L.Ed. 303 (1926), courts have applied the `fairly debatable' rule to cases involving zoning matters. This rule is based on the predicate that legislative functions are to be performed by our legislative bodies and judicial functions are confined to the judiciary. The rule itself is clear, however, its application has often caused us difficulty. The Supreme Court of Florida has recently clarified its application. When the zoning authority itself has encroached upon its comprehensive zoning scheme it cannot be said to be `fairly debatable' when property in the area is rezoned to a classification compatible with the area's changed condition. City of Miami [Beach] v. Manilow, Fla., 226 So.2d 805 (1969), Case No. 37,929, opinion filed September 10, 1969." (236 So.2d at pages 203 and 204)
The Third District Court of Appeal again considered a similar situation in Manilow v. City of Miami Beach, Fla. App.3rd 1968, 213 So.2d 589. There the Appellate Court discussed in lengthy detail the factual situation and then stated:
"The factual situation herein is quite similar to that of Kugel v. City of Miami Beach, Fla.App. 1968, 206 So.2d 282, 284, 285, where this court stated that `the changes in the area have resulted in a large concentration of nonresidential activity in a residential area' and `that the character of the property has already been changed by other actions of a municipality'. *225 We will not add to this opinion with the other similarities in Kugel. The court therein held that `where changed conditions created a situation where the zoning of appellant's property is so unreasonable as to constitute a taking of his property', then the courts are justified in striking down the arbitrary zoning classification." (Citing numerous cases; 213 So.2d at page 593; underlining added)
* * * * * *
"The rationale applied in Kugel, supra, appears to be appropriate here. To deny the relief sought herein, as in Kugel, would constitute spot zoning in reverse. See Smith (& DeMaris Investing Co.) v. City of Miami Beach, Fla.App. 1968, 213 So.2d 281." (213 So.2d at page 593; underlining added)
* * * * * *
The record reflects that plaintiff carried the burden of showing that this property was unsuitable for use under a single family residence classification and that it would be arbitrary and unreasonable to impose on this property a zoning classification more restrictive than RE multiple family zoning." (213 So.2d at page 593; underlining added)
The reference to "spot zoning in reverse" reciting in Manilow and Kugel is applicable in the case sub judice. Reference to the physical location of the subject property readily reveals that were the zoning restrictions sought to be imposed by appellants to prevail the end result would be "spot zoning in reverse".
As stated in Shearer v. Metropolitan Dade County, Fla.App.3rd 1966, 189 So.2d 501:
"* * * It is not the function of the court to rezone property, but it is our function, when facts and circumstances disclosed so prompt, to determine at what point zoning restrictions become arbitrary. Burritt v. Harris, supra. That point has been reached here. * * *" (189 So.2d at page 503)
In another case, City of Clearwater v. College Properties, Inc., Fla.App. 2nd 1970, 239 So.2d 515, the Appellate Court again affirmed the action of the lower court quashing the city's denial of plaintiff's application for change of zoning and enjoining the city from enforcing its zoning regulation as applied to the plaintiff's property. There the Court found that the property which was the subject of that suit was surrounded by other properties used or zoned for purposes compatible with the zoning sought, and that there was no demand for property in the area zoned in the manner that the subject property was then zoned, and further that the existing zoning had no reasonable relationship to public health, safety, morals or general welfare. The Court thereupon stated:
"In the case sub judice the block in which the subject property is situated is surrounded by B zoning, except for the narrow parkway strip to the east, and is similar to the `veritable island' described in Tollius v. City of Miami, Fla. 1957, 96 So.2d 122, where our Supreme Court held that the propriety of the restrictions on the use of the property was not `fairly debatable.' Mr. Justice Thomas, speaking for the Court in that case, said:
`There must be a substantial and reasonable relationship between the need for zoning restrictions and the public health, morals, safety or welfare to justify interference, by exercise of the police power, with an owner's right to the enjoyment of his property. Only in the presence of such necessity will he be required to make a personal sacrifice for the good of the people. City of Miami Beach v. Lachmann, Fla., 71 So.2d 148.'

*226 "In Burritt v. Harris, Fla. 1965, 172 So.2d 820, as modified by City of St. Petersburg v. Aikin, Fla. 1968, 217 So.2d 315, the Supreme Court said:
`If the zoning restriction exceeds the bounds of necessity for the public welfare, as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights.'" (citing numerous cases)
`To deny the relief sought herein * * * would constitute spot zoning in reverse.'
"We hold that the property owners sustained the burden of showing that the zoning of the subject property is arbitrary and unreasonable, has no reasonably debatable relationship to the public health, safety or general welfare, and that their property should be rezoned for a use consistent with surrounding areas and circumstances." (Citing numerous cases; 239 So.2d at pages 517 and 518)
Judge Johnson, speaking for this Court in William Murray Builders, Inc. v. City of Jacksonville, Fla.App. 1st 1971, 254 So.2d 364, succinctly summed up the law incident to zoning cases when he said:
"* * * One's right to devote his real estate to any legitimate use is properly within the protection of the Constitutions of the United States and Florida. Legislators may not, under the guise of the police power, impose restrictions which are unnecessary or unreasonable upon the use of private property or upon the pursuit of useful activities. State ex rel. Henry v. City of Miami, 117 Fla. 594, 158 So. 82 (1934). An action imposing restrictions on private property must be kept within the limits of necessity for the public health, morals, safety or welfare, or it will be recognized as an unlawful taking. Hence, while it is not the function of a court to rezone property, it is our function to determine at which point zoning restrictions become arbitrary. Burritt v. Harris, 172 So.2d 820 (Fla. 1965)." (254 So.2d at page 366)
In summary, we find that the able and learned trial judge did not misapply the "fairly debatable rule" and that the final judgment here appealed is not only well grounded in the law, but also the evidence.
Affirmed.
McCORD and MILLS, JJ., concur.